**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7115**

WRITER'S INTERNET ADDRESS
**jonpickhardt@quinnemanuel.com**

January 18, 2016

<u>VIA ECF</u>

Hon. William H. Pauley, III
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

  Re: *U.S. Bank National Association v. Triaxx Prime CDO 2006-1, Ltd., et al.*
    15 Civ. 10172 (WHP)

Dear Judge Pauley:

  As counsel to Interpleader-Defendant South Tryon, LLC ("South Tryon"), we submit this pre-motion letter in respect of South Tryon's proposed motion for summary judgment seeking an order that, under the plain terms of the indenture, dated as of September 7, 2006 (the "Indenture"), among Triaxx Prime CDO 2006-1, Ltd. ("Triaxx 06-1" or the "Issuer"), as issuer, Triaxx Prime CDO 2006-1, LLC, as co-issuer, and U.S. Bank National Association (successor-in-interest to Bank of America, N.A. (successor-by-merger to LaSalle Bank National Association)), as trustee: (i) certain of the Collateral Debt Securities[1] held by Triaxx 06-1 have been Defaulted Securities for three or more years (the "Three Year Defaulted Securities"); (ii) Interpleader-Defendant Triaxx Asset Management, LLC ("Triaxx Asset Management" or the "Collateral Manager"), as collateral manager to Triaxx 06-01, is required to sell the Three Year Defaulted Securities immediately; and (iii) Triaxx Asset Management is required to sell any other Defaulted Securities within three years of their becoming Defaulted Securities.

  The dispute presented in this interpleader action can be resolved based upon the plain terms of two provisions of the Indenture.  These provisions—set forth in Section 12.1(a)(ii) and (b)—provide protection to senior Noteholders like South Tryon by requiring that the Issuer sell Defaulted Securities within a three year period.  Notwithstanding these clear provisions, Triaxx Asset Management has caused a breach of the Indenture by allowing the 49 Three Year

---

  [1] Capitalized terms used but not defined herein shall have the meaning set forth in the Indenture.

Defaulted Securities to remain in Triaxx 06-1's portfolio for over three years after they first became Defaulted Securities without its undertaking the sales efforts that are required by the Indenture.

The clear and unambiguous terms of the Indenture and undisputable facts concerning the Three Year Defaulted Securities provide the basis for this proposed motion and conclusively establish the Collateral Manager's obligation to effect the sale of the Three Year Defaulted Securities.

### The Indenture

The Indenture is clear that the Issuer, by and through the Collateral Manager, is obligated to sell Defaulted Securities within three years. Section 12.1(a)(ii) of the Indenture requires that "the Issuer . . . shall sell (a) any Defaulted Security . . . within three years after such Collateral Debt Security became a Defaulted Security . . . ." (Indenture § 12.1(a)(ii).) Defaulted Securities are defined under the Indenture as securities exhibiting characteristics indicating an enhanced risk of loss, including—as relevant here—any Collateral Debt Security "that is rated 'Ca' or 'C' by Moody's or is rated 'Caa3' by Moody's and is placed by Moody's on a watchlist for possible downgrade by Moody's" or "that is rated 'CC,' 'D' or 'SD' or below (or has had its rating withdrawn) by Standard & Poor's . . . ." (*Id.* § 1.1 at 13-14 (definition of "Defaulted Security," paragraphs (e) and (f)).)

The Issuer, a special purpose entity with no employees, fulfills its obligation to sell Defaulted Securities with the assistance of the Collateral Manager, who is responsible for acting on behalf of the Issuer in respect of the purchase and sale of assets. As such, Section 12.1(b) of the Indenture requires that "[t]he Collateral Manager, on behalf of the Issuer, shall use commercially reasonable efforts to sell . . . each Defaulted Security . . . within the time periods (if any) specified in Section 12.1(a) . . . ." (*Id.* § 12.1(b).) Under Section 12.1(b), the Collateral Manager must do so in accordance with the following procedure: "In respect of each Defaulted Security . . . , not less than five Business Days prior to the date on which a Defaulted Security . . . must be sold in accordance with Section 12.1(a) hereof, the Collateral Manager shall solicit *bona fide* bids for such Defaulted Security . . . from at least three Approved Dealers." (*Id.*) Section 12.1(b) obligates the Issuer to sell Defaulted Securities so auctioned "to the highest bidder." (*Id.*)

Section 12.1 allows the Collateral Manager certain discretion as to the timing of the sale of Defaulted Securities *within* the three-year period, but it does not permit the Collateral Manager to wait *beyond* this three-year period to effect the required sales. Any argument that the Collateral Manager (or Issuer) has discretion to defer effecting sales of Defaulted Securities until after the three-year period is forestalled by the mandatory language in the relevant provisions of Section 12.1 (*see, e.g., id.* § 12.1(a)(ii) ("Issuer . . . **shall** sell"); *id.* § 12.1(b) ("Collateral Manager . . . **shall** use commercially reasonable efforts"; "Collateral Manager **shall** solicit *bona fide* bids"; "Issuer **shall** sell . . . to highest bidder.") (emphasis added)). The lack of such discretion is also confirmed by the contrasting discretionary language chosen for other provisions of Section 12.1 that govern sales in other contexts (*see, e.g., id.* § 12.1(a)(i) ("Issuer . . . ***may*** sell . . . any Defaulted Security . . . ."); *id.* § 12.1(a)(v) ("Issuer . . . ***may*** sell any Collateral Debt Security . . . prior to the end of the Reinvestment Period . . . .") (emphasis added)).

2

Moreover, any argument that other contractual provisions that govern the Collateral Manager's general duties imply the discretion to ignore the mandatory sale of Three Year Defaulted Securities is rebutted by the foundational canon of contract interpretation under New York law that "'definitive, particularized contract language [such as that set forth in Section 12.1(a)(ii) and (b)] takes precedence over expressions of intent that are general, summary, or preliminary.'" *See Rabin v. Mony Life Ins. Co.*, 387 F. App'x 36, 40 (2d Cir. 2010) (quoting *John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 669 n.8 (2d Cir. 1983)); *see also Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956) ("Even if there was an inconsistency between a specific provision and a general provision of a contract …, the specific provision controls.").

### The Three Year Defaulted Securities

It is also beyond reasonable dispute that each of the Three Year Defaulted Securities (i) constitutes a Defaulted Security; and (ii) became a Defaulted Security three or more years ago.  *First*, the Issuer, by and through the Collateral Administrator, has listed Defaulted Securities in each Monthly Report and Note Valuation Report (collectively, the "Reports") published by Triaxx 06-1 since September 2009, and Three Year Defaulted Securities—which the Reports refer to as "Aged Defaulted Securities"—starting in October 2012.  All of the 49 Three Year Defaulted Securities are listed as Aged Defaulted Securities in Triaxx 06-1's most recent Monthly Report.  *Second*, the accuracy of the Defaulted Security and Three Year Defaulted Security designations appearing in the Reports is verified by Bloomberg reports reflecting the ratings action that caused each of these Collateral Debt Securities to become a Defaulted Security, and the date on which that ratings action occurred.

### Summary Judgement is Appropriate At This Time

Summary judgment is appropriate at this early stage of the proceedings because the undisputable facts, applied to the clear and unambiguous terms of the Indenture, conclusively establish that (i) the Three Year Defaulted Securities have been Defaulted Securities for three or more years; and (ii) the Collateral Manager is required under the Indenture to effect the sale of the Three Year Defaulted Securities.  Resolving this dispute at this time will also protect South Tryon and other senior Noteholders from continuing risk of further deterioration in the value of the Three Year Defaulted Securities that will impair their recoveries.

Respectfully submitted,

Jonathan E. Pickhardt