

Eric N. Whitney
+1 212 836 7930 office
eric.whitney@kayescholer.com

250 West 55th Street
New York, NY 10019-9710
+1 212 836 8000 main
+1 212 836 6830 fax

January 22, 2016

**VIA ECF**

Hon. William H. Pauley, III
United States District Judge
500 Pearl Street
New York, New York 10007-1312

Re:   *U.S. Bank National Association v. Triaxx Prime CDO 2006-1, Ltd., et al*
        15 Civ. 10172 (WHP)

Dear Judge Pauley:

     We are counsel to Interpleader Defendant Triaxx Asset Management, LLC (the "Collateral Manager"). We submit this letter in response to the January 18, 2016, pre-motion letter submitted by Interpleader Defendant South Tryon, LLC ("South Tryon") in support of its proposed motion for summary judgment.

     The Collateral Manager respectfully submits that South Tryon's proposed motion cannot resolve the dispute at this stage of the action. The Collateral Manager respectfully submits that the terms of the September 7, 2006, Indenture (the "Indenture") and the interlocking Collateral Management Agreement of the same date (the "CMA"), which together define the Collateral Manager's duties with respect to the Triaxx Prime CDO 2006-1 ("Triaxx 06-1"), impose obligations that must be harmonized with each other as they relate to the Collateral Manager's disposition of Collateral Debt Securities[1] advocated by South Tryon.

     Under New York law, the Indenture and the CMA are to be read together. Section 12.1(a)(ii) of the Indenture requires the Issuer, upon the direction of the Collateral Manager, to sell Defaulted Collateral Debt Securities within three years after they become Defaulted

---

[1]   Capitalized terms are used as defined in the Indenture and the CMA.

Hon. William H. Pauley, III  
United States District Judge

Page 2 of 3

January 22, 2016

Securities. In so doing, Section 12.1(b) of the Indenture requires the Collateral Manager to use commercially reasonable efforts to sell Defaulted Collateral Debt Securities in the three-year time period specified by Section 12.1(a)(ii). With respect to any mandatory sale pursuant to Section 12.1(a)(ii), the Collateral Manager is required to put the three-year Defaulted Securities out for bid, but that obligation remains subject to the express requirement that the Collateral Manager use commercially reasonable efforts. The Indenture, however, provides scant guidance regarding the mechanics of that process, noting only that the Collateral Manager must solicit *bona fide* bids from at least three Approved Dealers. At the same time, the CMA requires the Collateral Manager to "use commercially reasonable efforts to ensure that no action is taken by it … which would … (f) adversely affect the interests of the Trustee, [sic] the Noteholders in any material respect (other than the effect of such actions expressly permitted hereunder or under the Indenture)…." CMA §7. In determining whether a proposed action would have an adverse effect on Noteholders, the Collateral Manager is required to exercise in good faith its reasonable business judgment. *Id.* In order to determine what commercially reasonable efforts are necessary and how the Collateral Manager's business judgment should be exercised, a number of facts need to be weighed by a trier of fact.

Since assuming its role, the Collateral Manager has endeavored to manage the collateral of Triaxx 06-1, which is currently composed exclusively of vintage 2005-2007 non-agency residential mortgage backed securities ("RMBS"), in a commercially reasonable manner and in the interests of all Noteholders, as mandated by the Indenture and CMA. Among other things, the Collateral Manager has pursued litigation and settlements, both together with other investors and on its own, against issuers, underwriters and trustees of the RMBS and originators and servicers of the underlying mortgages, resulting in substantial past recoveries as well as substantial projected future recoveries for the benefit of all Noteholders. The Notes are fully performing, as Noteholders continue to receive the principal and interest due them. Moreover, the underlying securities continue to perform – there has been no financial default, just a ratings downgrade. In the Collateral Manager's good faith exercise of business judgment, selling Defaulted Collateral Securities now and in the manner advocated by South Tryon (*i.e.*, liquidating approximately 75% of the performing collateral of Triaxx 06-1 without a sales agent, reserve pricing or other measures to ensure that fair value is obtained for the securities) would forfeit those future recoveries and likely result in "fire-sale" prices, an outcome that would be neither the result of commercially reasonable efforts nor in the interests of all Noteholders.

South Tryon posits that certain provisions of the Indenture override these collective obligations and compel the Collateral Manager not to exercise its business judgment and to act in the interests of all Noteholders. Other than its *ipse dixit*, South Tryon offers no support for its myopic reading of the agreements. If the Court concludes that South Tryon's interpretation of the agreements is too narrow, or if the Court concludes that the Indenture and/or CMA are ambiguous and/or lack material terms concerning the manner of sale of Collateral Debt Securities, which the Collateral Manager respectfully submits is the case, then the facts discussed above are highly relevant to the Court's determination as to whether there are issues of fact that preclude summary judgment. Yet, the Court will have no factual record on which to base a

Hon. William H. Pauley, III  
United States District Judge
         Page 3 of 3         January 22, 2016

decision. As such, the Collateral Manager respectfully submits that a full factual record should be developed before a motion for summary judgment should be determined.

Finally, assuming that the evidence in support of South Tryon's proposed motion will be substantially the same as its originally submitted motion for summary judgment, there are substantial evidentiary deficiencies that preclude summary adjudication of this dispute. Specifically, South Tryon has failed to provide any competent summary judgment evidence of its ownership of Triaxx 06-1 securities. South Tryon relies on an attorney declaration attesting to such ownership based on his "work for South Tryon, conversations with other [anonymous and unidentified] representatives of South Tryon, and/or review of [unidentified] relevant documents." Declaration of a Representative of South Tryon, LLC at 1. Moreover, this Declaration as well as the attorney declaration of Jonathan E. Pickhardt reveal that a significant portion of South Tryon's alleged ownership interest in the Triaxx 06-1 securities exists by virtue of its alleged beneficial ownership of securities of another trust that supposedly itself owns Triaxx 06-1 Notes, but about which no evidence is provided. See *id*; Declaration of Jonathan E. Pickhardt at 2. Thus, there is a failure of proof or, at a minimum, genuine issues of material fact concerning South Tryon's standing to assert claims in this action.

For the foregoing reasons, the Collateral Manager respectfully submits that a motion for summary judgment is not appropriate at this early stage of the proceedings.

                                                   Respectfully submitted,

                                                   Eric N. Whitney

cc:    All counsel of record (by ECF)