# ALSTON&BIRD LLP

90 Park Avenue
New York, NY 10016
212-210-9400
Fax: 212-922-3884
www.alston.com

Michael E. Johnson                Direct Dial: 212-210-9584                Email: michael.johnson@alston.com

January 22, 2016

**VIA ECF**

Hon. William H. Pauley III
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, New York 10007-1312

Re:   *U.S. Bank National Association, solely in it capacity as*
      *Trustee v. Triaxx Prime CDO 2006-1, Ltd. et al.;*
      *Case No. 1:15-cv-10172-(WHP)*

Dear Judge Pauley:

We represent Interpleader-Plaintiff, U.S. Bank National Association, solely in its capacity as Trustee ("Trustee"), in the above-referenced action (the "Action").

Pursuant to Your Honor's January 7, 2016 Scheduling Order [Dkt. No. 28], I write to inform the Court that the Trustee takes no position with respect to Interpleader-Defendant South Tryon, LLC's pre-motion letter dated January 18, 2016 [Dkt. No. 34] submitted in connection with its proposed motion for summary judgment (the "Motion").

I also write to inform the Court that the Trustee provided the enclosed Notice of Interpleader Action, dated January 11, 2016 (the "Notice"), to The Depository Trust Company via LENS notification and also posted it to the Trustee's website, U.S. Bank's Trust Gateway Portal, to inform holders of the Notes of Triaxx Prime CDO 2006-1, Ltd. of the Action, the proposed Motion, and the upcoming January 29, 2015 conference.

Very truly yours,

Michael E. Johnson

Enclosure

cc:  Counsel of Record (*via ECF notification*)



Global Corporate Trust Services
190 South LaSalle Street
Chicago, IL 60603

**Notice to Holders of Notes of Triaxx Prime CDO 2006-1, Ltd.**

| Class | CUSIP[1] Reg S | CUSIP Rule 144A |
|---|---|---|
| Class A-1 Notes | G9064EAA4 | 896005AA3 |
| Class A-2 Notes | G9064EAB2 | 896005AB1 |
| Class B Notes | G9064EAC0 | 896005AC9 |
| Class X Notes | G90641AA2 | 896003AA8 |
| Class C Notes | G90641AB0 | 896003AB6 |

**and notice to the parties listed on <u>Schedule A</u> attached hereto.**

**PLEASE FORWARD THIS NOTICE TO BENEFICIAL HOLDERS**

<u>**NOTICE OF INTERPLEADER ACTION**</u>

Reference is made to the Indenture, dated as of September 7, 2006 (as amended through the date hereof, the "Indenture"), among Triaxx Prime CDO 2006-1, Ltd. as issuer (the "*Issuer*") and U.S. Bank National Association (successor to Bank of America, N.A. (successor by merger to LaSalle Bank National Association)), as trustee (in such capacity, the "*Trustee*"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Indenture.

I.      **Collateral Manager's Solicitation of Comments Regarding Collateral Debt Securities**.

On December 18, 2015, Triaxx Asset Management, LLC in its capacity as collateral manager for the Issuer (the "*Collateral Manager*") provided a notice (the "*Collateral Manager Notice*") to Holders indicating the Collateral Manager had received conflicting views from Holders as to whether it should sell Defaulted Securities under the terms of the Indenture and soliciting comments from Holders as to whether such Defaulted Securities should be sold. A prior notice from the Collateral Manager was also provided in respect of the foregoing on August 14, 2015.

II.     **The Commencement of Interpleader Action**.

On December 31, 2015, the Trustee filed a Complaint (Case No. 1:15-cv-10172-WHP) (the "*Complaint*"), denominated as an interpleader action, naming the Issuer,

[1] The CUSIP numbers appearing herein are included solely for the convenience of the Holders. The Trustee is not responsible for the selection of use of CUSIP numbers, or for the accuracy or correctness of CUSIP numbers printed on any Securities or as indicated in this notice.

Collateral Manager and certain Noteholders as defendants, in the United States District Court for the Southern District of New York (the "*Court*") requesting certain relief pertaining to the Defaulted Securities and any potential sale thereof (the "*Interpleader Action*"). In the Complaint, the Trustee seeks an order requiring that the named defendants interplead and settle all claims to the Defaulted Securities and the sale thereof between themselves and any other persons who claim or may claim an interest, beneficial or legal, in such Defaulted Securities and the sale thereof.[2] The Trustee also seeks a judicial determination in the Complaint as to (a) whether certain of the Collateral Debt Securities are Defaulted Securities, and if so (b) whether the Collateral Manager is required to sell any such Defaulted Securities, and if so (c) when such a sale should be effectuated. The Trustee is taking no position in the Interpleader Action as to how the issues enumerated in the foregoing sentence should be resolved. A copy of the Complaint is attached hereto as Exhibit A and has been posted at the Trustee's website located at https://usbtrustgateway.usbank.com. **Please refer to the Complaint for its complete allegations and requested relief.**

### III. Proposed Order to Show Cause concerning Motion for Summary Judgment.

On January 5, 2016, one of the named Noteholder defendants in the Complaint, South Tryon, LLC ("*South Tryon*"), moved the Court for an Order to Show Cause why an order should not be issued pursuant to Rule 56 of the Federal Rules of Civil Procedure granting summary judgment requiring that certain Defaulted Securities be sold (the "*Proposed Order to Show Cause*"). The Court held a telephonic conference with counsel for the parties in the Interpleader Action to discuss the Proposed Order to Show Cause. During that call, the Court ordered interim deadlines concerning the filing of responsive pleadings to the Interpleader Complaint and pre-motion letters. The Court also scheduled a hearing **on January 29, 2016, at 12 p.m. to be held in Courtroom 20B of the Court, located at 500 Pearl Street, New York, New York 10007**, to further discuss the Proposed Order to Show Cause and any other motions that may be raised.

**The rights of the parties addressed herein may be affected by this pending Interpleader Action. Final resolution by the Court of the questions raised in the complaint may affect your rights and/or investment in the transaction. The parties addressed herein should consider whether their particular interests are adequately represented in this litigation and whether direct participation by them in this Interpleader Action may be warranted.**

The Trustee will continue to participate in and monitor the Interpleader Action described above. However, Holders of the Notes issued pursuant to the Indenture should not rely on the Trustee or this notice as their sole source of information regarding the Interpleader Action. The Trustee does not by this notice assume any obligation to provide future notice to the Holders regarding developments of, or information relating

---

[2]   In the Complaint, the Trustee also seeks an award of its costs and disbursements, including legal fees and expenses, with respect to this Interpleader Action, from any sale of Defaulted Securities.

to, the Interpleader Action.  Holders should consider seeking their own legal advice concerning these matters.  In addition, the Interpleader Action, the Proposed Order to Show Cause and other documents filed with the Court in respect of the Interpleader Action are available directly from the Court at https://ecf.nysd.uscourts.gov/cgi-bin/login.pl (after establishing an account).

In addressing inquiries that may be directed to it, the Trustee may conclude that a specific response to a particular inquiry from an individual Noteholder is not consistent with equal and full dissemination of information to all Noteholders.  Noteholders should not rely on the Trustee as their sole source of information.  The Trustee makes no recommendations, and gives no investment, tax or legal advice.  Each Noteholder should seek advice from its own counsel and advisors based on the Noteholder's particular circumstances.

The Trustee expressly reserves all rights under the Indenture, including without limitation its right to payment in full of all fees and costs (including, without limitation, fees and costs incurred or to be incurred by the Trustee in performing its duties, indemnities owing or to become owing to the Trustee, compensation for Trustee time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) prior to any distribution to Noteholders or other parties, as provided in and subject to the applicable terms of the Indenture, and its right, prior to exercising any rights or powers vested in it by the Indenture at the request or direction of any of the Noteholders, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith; and all rights that may be available to it under applicable law or otherwise.

Noteholders should direct any inquiries, in writing, to: Steven Illingworth, U.S. Bank National Association, Corporate Trust Services, 190 South LaSalle St., 8th Floor, Chicago, IL 60603, or via email at steven.illingworth@usbank.com.

**U.S. BANK NATIONAL ASSOCIATION,**                    **January 11, 2016**
**AS TRUSTEE**



Global Corporate Trust Services
190 South LaSalle Street
Chicago, IL 60603

## Schedule A

Triaxx Prime CDO 2006-1, Ltd.
c/o Intertrust SPV (Cayman) Limited
190 Elgin Avenue, George Town
Grand Cayman KY1-9005
Cayman Islands
Attention:  Daniel Rewalt; Evert Brunekreef (Directors)

Triaxx Prime CDO 2006-1, LLC
c/o Puglisi & Associates
850 Library Ave, Suite 204
Newark, DE 19711
Attention:  Donald Puglisi, Esq.

Triaxx Asset Management LLC
450 Park Avenue, 27th Floor
New York, NY 10022

Custom House Administration and Corporate Services Limited
25 Eden Quay
Dublin 1, Ireland

## Exhibit A

[See attached Interpleader Complaint]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, *solely in its capacity as Trustee,* | : | |
| | : | **INTERPLEADER COMPLAINT** |
| Interpleader Plaintiff, | : | |
| - against - | : | |
| | : | Case No._____ |
| TRIAXX PRIME CDO 2006-1, LTD., TRIAXX ASSET MANAGEMENT LLC (f/k/a ICP ASSET MANAGEMENT LLC), SOUTH TRYON, LLC, GOLDMAN SACHS & CO., BLACKROCK FINANCIAL MANAGEMENT, INC., GOLDENTREE ASSET MANAGEMENT LP. | : | |
| | : | |
| | : | |
| Interpleader Defendants. | : | |

Interpleader Plaintiff U.S Bank National Association ("U.S. Bank" or "Trustee"), as successor to Bank of America, National Association (successor by merger to LaSalle Bank National Association ("LaSalle")), solely in its capacity as Trustee under the Indenture, dated as of September 7, 2006, by and among its predecessor LaSalle, Triaxx Prime CDO 2006-1, Ltd., as Issuer, and Triaxx Prime CDO 2006-1, LLC, as Co-Issuer (the "Indenture")[1], alleges and states that:

### INTRODUCTION

1.     The Trustee brings this interpleader action for the purpose of obtaining adjudication of the respective rights of the Interpleader Defendants with respect to certain Collateral Debt Securities held by the Trustee pursuant to the Indenture.  Pursuant to the Indenture and Collateral Management Agreement (defined below), the Collateral Manager (defined below) is responsible for supervising and directing the sale of Collateral Debt

---

[1] All capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Indenture.

Securities.  The Trustee has no responsibility regarding the selection of Collateral Debt Securities to be sold and acts solely upon the direction of the Collateral Manager in releasing its lien and custody of Collateral Debt Securities in connection with any sale of Collateral Debt Securities by the Collateral Manager, on behalf of the Issuer.

2.      Notwithstanding its circumscribed role, the Trustee finds itself caught in a dispute over the potential sale of certain Collateral Debt Securities held by it.  Certain of the Interpleader Defendants have stated or implied that, depending on whether such securities are sold, the Trustee could be named as a defendant in litigation.

3.      The Trustee therefore brings this action to obtain a judicial determination pursuant to the Collateral Management Agreement and the Indenture, as to (i) whether certain of the Collateral Debt Securities are Defaulted Securities, and if so (ii) whether the Collateral Manager is required to sell any such Defaulted Securities, and if so (iii) whether the Collateral Manager has discretion as to when such a sale should be effectuated.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties hereto and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      This Court also has subject matter jurisdiction over this action under 12 U.S.C. § 632 (the "Edge Act").  This action satisfies the requirements of section 632 because it was brought by U.S. Bank, a national banking association organized under the laws of the United States, and it arises out of banking activity with a distinct foreign aspect. Specifically, U.S. Bank provides corporate trust and other related services to, or on behalf of, the Issuer, which is organized under the laws of the Cayman Islands.  Thus, this action

arises out of the Trustee's execution of such services on behalf of a foreign issuer, which is an international banking activity.

      6.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1397 because one or more defendants reside within this judicial district.

PARTIES

      7.     Interpleader Plaintiff U.S. Bank, as Trustee under the Indenture, is a national banking association with its main office in Minneapolis, Minnesota.

      8.     Upon information and belief, Interpleader Defendant Triaxx Asset Management LLC ("Triaxx" or the "Collateral Manager") is a limited liability company organized and existing under the laws of the State of Delaware, and none of its members are citizens of the State of Minnesota.  Triaxx serves as the Collateral Manager for the Issuer under the Indenture and the Collateral Management Agreement, dated September 7, 2006, by and between Triaxx Prime CDO 2006-1, Ltd. and ICP Asset Management LLC (the "Collateral Management Agreement").

      9.     Upon information and belief, Interpleader Defendant South Tryon, LLC ("South Tryon") is a limited liability company organized and existing under the laws of the State of Delaware, and none of its members are citizens of the State of Minnesota.  Upon information and belief, South Tryon is a Holder of Class A-1 Notes.

      10.     Upon information and belief, Interpleader Defendant Goldman Sachs & Co. ("GS&C") is a limited liability company organized and existing under the laws of the State of Delaware, and none of its members are citizens of the State of Minnesota.  Upon information and belief, GS&C is a Holder of Class A-2 Notes and Class B Notes.

11.     Upon information and belief, Interpleader Defendant GoldenTree Asset Management LP ("GoldenTree") is a limited partnership organized and existing under the laws of the State of Delaware, and none if its partners are citizens of the State of Minnesota. Upon information and belief, GoldenTree is a Holder of Class A-2 Notes.

12.     Upon information and belief, Interpleader Defendant BlackRock Financial Management, Inc. ("BlackRock," together with GS&C, GoldenTree and BlackRock, the "Objecting Noteholders") is a corporation incorporated in the State of Delaware, with its principal place of business in New York.  Upon information and belief, BlackRock is a Holder of Class A-2 Notes and Class B Notes.

13.     Interpleader Defendant Triaxx Prime CDO 2006-1, Ltd. is an exempted corporation organized under the laws of the Cayman Islands.  Triaxx Prime CDO 2006-1, Ltd. is the Issuer under the Indenture and the owner of the Collateral Debt Securities.

## BACKGROUND

14.     Pursuant to the Indenture, the Issuer issued certain Notes that are secured by a pool of Collateral Debt Securities and other Collateral.  The Notes were issued in five different classes, or tranches, each of which is entitled to the proceeds generated by the Collateral Debt Securities in a specified Priority of Payments.

15.     Pursuant to the Indenture, the Issuer pledged the Collateral Debt Securities and other Collateral to the Trustee, in order to secure the Issuer's obligations under the Indenture.  The Trustee holds the Collateral Debt Securities on behalf of the Noteholders and other Secured Parties under the Indenture, and receives and distributes the proceeds payable in respect of such Collateral Debt Securities.

16.    The Indenture sets forth various events that cause a Collateral Debt Security to become a Defaulted Security.  Section 1.01 of the Indenture provides that a Collateral Debt Security becomes a Defaulted Security in the event, among others, that it is "rated 'Ca' or 'C' by Moody's or is rated 'Caa3' by Moody's and is placed by Moody's on a watchlist for possible downgrade by Moody's" or "is rated 'CC,' 'D' or 'SD' or below (or had its rating withdrawn) by Standard & Poor's."  Indenture § 1.01.

17.    In the event that a Collateral Debt Security becomes a Defaulted Security, the Indenture provides that the Collateral Manager is required to use commercially reasonable efforts to solicit bids for the Defaulted Security and to direct the Issuer to sell the Defaulted Security to the highest bidder.

18.    Section 12.1(a)(ii) of the Indenture provides, in pertinent part, that the "Issuer (upon direction of the Collateral Manager to the Issuer and the Trustee) … shall sell (a) any Defaulted Security … within three years after such Collateral Debt Security became a Defaulted Security."  *Id.* § 12.1(a)(ii).  Moreover, Section 12.1(b) of the Indenture provides, in pertinent part, that the "Collateral Manager, on behalf of the Issuer, shall use commercially reasonable efforts to sell … each Defaulted Security … required to be sold pursuant to Section 12.1(a) … within the time periods … specified in Section 12.1(a)."  *Id.* § 12.1(b).

19.    In the event that a Defaulted Security is sold pursuant to Section 12(a)(ii) of the Indenture, the Trustee executes the sale by releasing the lien on the Defaulted Security and releasing such asset from its custody.  *Id.* § 10.8(a).  The Trustee then deposits the Sale Proceeds in one of the Collections Accounts, *id.* § 10.8(d), and amounts in such

accounts are available for distribution to Noteholders and other Secured Parties in accordance with the Indenture's Priority of Payments. *Id.* § 10.2(g).

**THE DISPUTE**

20.     The Monthly Reports and Note Valuation Reports prepared and distributed on behalf of the Issuer under the Indenture and sent to Noteholders and certain other parties identify certain Collateral Debt Securities as Defaulted Securities.

21.     On July 15, 2015, South Tryon, in its capacity as a Holder of Class A-1 Notes, sent a letter to the Collateral Manager demanding that the Collateral Manager immediately proceed with a sale of the Defaulted Securities identified in the May 26, 2015 Note Valuation Report, pursuant to Sections 12.1(a)(ii) and 12.1(b) of the Indenture. South Tryon stated that the Defaulted Securities consisted of one larger subset that became Defaulted Securities more than three years before the date of South Tryon's letter and another smaller subset that became Defaulted Securities within the last three years of the date of South Tryon's letter, and that the Collateral Manager's delay in directing a sale of the Defaulted Securities constituted a failure to fulfill its obligation to sell the Defaulted Securities. As reported on the most recent Monthly Report, the number of Defaulted Securities has increased since the May 26, 2015 Note Valuation Report.

22.     On August 4, 2015, the Collateral Manager sent a letter to the Trustee expressing certain concerns regarding South Tryon's demand that the Collateral Manager sell the Defaulted Securities. On August 14, 2015, the Collateral Manager sent to the Trustee a notice to "Investors in Triaxx Prime CDO 2006-1" (the "August 2015 Notice"), with the intent of notifying Noteholders of South Tryon's demand that the Collateral Manager direct the sale of the Defaulted Securities and stating certain concerns regarding

the sale of the Defaulted Securities.  Upon request of the Collateral Manager, the Trustee sent the August 2015 Notice to Noteholders via the Depository Trust Company's LENS system and posted the August 2015 Notice to the Trustee's website.

23.     In its August 2015 Notice, the Collateral Manager stated that, based on its analysis, it believed that a sale of the Defaulted Securities would result in losses to the Issuer and related Collateral which would be primarily borne by Noteholders that are subordinate to the Class A-1 Notes.  It also noted that a sale of the Defaulted Securities could result in the Noteholders not receiving the benefit of monies that might be recovered in certain litigations that had been commenced in respect of certain Defaulted Securities. The Collateral Manager invited Noteholders to inform the Collateral Manager of their position regarding the sale.

24.     In a series of communications between the Issuer and the Collateral Manager during September and October of 2015, the Issuer took the position that the Collateral Manager should liquidate the Defaulted Securities.

25.     On or around September 12, 2015, the Collateral Manager notified the Issuer that it was prepared to proceed with a sale of certain Defaulted Securities under Section 12.1(a)(ii) of the Indenture and was in the process of selecting a selling agent to effect the sale of the Defaulted Securities.

26.     On October 2, 2015, the Collateral Manager notified the Issuer that it was preparing the Defaulted Securities for sale, but that the details of the sale, including its timing and mechanics, were not yet confirmed and had not yet been disclosed to any Noteholders or market participants.

27.     Upon information and belief, on or about November 18, 2015, the Collateral Manager sent bid packages to potential bidders offering some of the Defaulted Securities for sale.

28.     On or around November 19, 2015, GS&C notified the Collateral Manager and the Issuer by e-mail that it had just become aware of the Collateral Manager's August 2015 Notice.  In its email, GS&C objected to the sale of Defaulted Securities on the basis, among others, that a sale would not be in the best interests of the Noteholders.  GS&C further requested that the Collateral Manager hold the Defaulted Securities pending the recoveries the Issuer was likely to obtain in the litigations.

29.     On or around November 20, 2015, counsel for GS&C sent a letter to the Collateral Manager, copying the Trustee, reiterating that it first became aware of the Collateral Manager's August 2015 Notice on November 18, 2015 and that it believed that a sale of the Defaulted Securities was improper.  GS&C noted that South Tryon was insisting the liquidation start on Monday, November 23, 2015, and took the position that the sale of the Defaulted Securities would not be in the best interests of the Issuer.  GS&C further stated that it reserved its rights and legal remedies in connection with the matters identified in its letter.

30.     On or around November 20, 2015, counsel for BlackRock and GoldenTree sent a letter to the Collateral Manager, copying the Trustee, stating that they objected to the sale of the Default Securities on the basis that the notice and timing of the sale was highly disadvantageous, and that the sale would adversely affect the value of the Notes. BlackRock and GoldenTree requested that the Collateral Manager desist from the proposed sale, and stated that if any sale of the Defaulted Securities were to occur, both BlackRock

and GoldenTree reserved their rights against all responsible parties, and would hold the Collateral Manager and the Trustee accountable should the sale proceed as scheduled.

31.     The Collateral Manager cancelled the sale of the Defaulted Securities in November 2015 based at least in part, upon information and belief, on the communications sent on the November 19 and 20 correspondence described above.

32.     On December 18, 2015, the Trustee forwarded a notice from the Collateral Manager to Noteholders stating that the Collateral Manager had received conflicting views from the Noteholders as to whether the Defaulted Securities should be sold under the terms of the Indenture.   In its Notice, the Collateral Manager solicited comments from all Noteholders concerning whether the Defaulted Securities should be sold.

33.     Also on December 18, 2015, counsel for South Tryon had a telephone call with counsel for the Trustee.   During that call, counsel for South Tryon indicated that it was considering steps that could be taken to effect the sale of the Defaulted Securities, notwithstanding the objections that had been received by other Noteholders.   Counsel for South Tryon informed the Trustee's counsel that one option under consideration was litigation in which the Collateral Manager and the Trustee would be named as defendants.

34.     As described above, the Trustee faces irreconcilable demands as to certain assets deposited under the Indenture.   On the one hand, South Tryon insists that the Defaulted Securities should be sold by the Collateral Manager and that the Trustee should facilitate such sale by releasing its liens on the Defaulted Securities and releasing such assets from its custody.   The Objecting Noteholders, on the other hand, object to a sale, and have threatened or suggested that the Trustee could be liable if it acts, at the direction of the Collateral Manager, to release and deliver the Defaulted Securities.

35.     The Trustee has no interest as a claimant in the Collateral Debt Securities that are the subject of this dispute, except to the extent of administrative fees and expenses owing to the Trustee by the Issuer and its costs and disbursements, including legal fees and expenses, with respect to this action, as may be awarded by the Court, may be payable from the sale of any of the Defaulted Securities.

36.     The above-entitled action is not brought by collusion with any of the Interpleader Defendants.

## PLEA FOR RELIEF

**WHEREFORE**, the Trustee asks this Court:

(i)     to order the Interpleader Defendants to interplead and to settle all claims to the Defaulted Securities and the sale thereof between themselves and any other persons who claim or may claim an interest, beneficial or legal, in such Defaulted Securities and the sale thereof;

(ii)    for a judicial determination as to (a) whether certain of the Collateral Debt Securities are Defaulted Securities, and if so (b) whether the Collateral Manager is required to sell any such Defaulted Securities, and if so (c) when such a sale should be effectuated;

(iii)   to restrain Interpleader Defendants and all claiming through or acting with them, or claiming any interest in the Defaulted Securities, from commencing or prosecuting any separate proceeding against the Trustee concerning or relating to the issues in this action;

(iv)    to award the Trustee its costs and disbursements, including legal fees and expenses, with respect to this action, from any sale of Defaulted Securities; and

(v)     to award the Trustee such other and further relief as the Court may deem just,

proper and equitable.

Dated: New York, New York
        December 31, 2015

ALSTON & BIRD LLP

By: /s/ Michael E. Johnson
    Michael E. Johnson
    Louis A. Russo
    90 Park Avenue
    New York, New York
    (212) 210-9400
    michael.johnson@alston.com
    louis.russo@alston.com

*Attorneys for Interpleader
Plaintiff U.S. Bank National
Association, solely in its
capacity as Trustee*

-11-