UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION,
*solely in its capacity as Trustee*,

                Interpleader-Plaintiff,

   vs.

TRIAXX PRIME CDO 2006-1, LTD.; TRIAXX ASSET MANAGEMENT LLC (f/k/a ICP ASSET MANAGEMENT LLC); SOUTH TRYON, LLC; GOLDMAN SACHS & CO.; BLACKROCK FINANCIAL MANAGEMENT, INC.; and GOLDENTREE ASSET MANAGEMENT LP,

                Interpleader-Defendants.

Case No. 1:15-cv-10172 (WHP)

## SOUTH TRYON, LLC'S RULE 56.1(a) STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Jonathan E. Pickhardt
Blair A. Adams
Kimberly E. Carson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Interpleader-Defendant South Tryon, LLC*

Pursuant to Local Civil Rule 56.1(a) of this Court, Interpleader-Defendant South Tryon, LLC ("South Tryon") respectfully submits this Statement of Material Facts as to which There Is No Genuine Issue To Be Tried ("Statement of Material Facts") in support of South Tryon's Motion for Summary Judgment, dated February 2, 2016.[1]

**Triaxx Prime CDO 2006-1, Ltd.**

1. Triaxx Prime CDO 2006-1, Ltd. ("Triaxx 06-1" or "Issuer") is a special purpose vehicle established to issue securities, in the form of collateralized debt obligations ("CDOs" or "Notes"), to investors. (Offering Circular dated September 6, 2006, relating to the offering by Triaxx 06-1 and Triaxx Prime CDO 2006-1, LLC of certain notes at 132 (Pickhardt Dec. Ex. C.; hereinafter, the "Offering Circular").)

2. Triaxx 06-1 issued Notes pursuant to an indenture, dated as of September 7, 2006 (Pickhardt Dec. Ex. A; hereinafter, the "Indenture"), among Triaxx 06-1, as issuer, Triaxx Prime CDO 2006-1, LLC, as co-issuer, and U.S. Bank National Association ("U.S. Bank") (successor-in-interest to Bank of America, N.A. (successor-by-merger to LaSalle Bank National Association)), as trustee (the "Trustee").[2] (*See, e.g.*, Indenture § 2.2 (describing "[t]he aggregate

---

[1] The following abbreviations are used throughout this Statement of Material Facts:
- "Pentlow Dec." refers to the Declaration of a Representative of South Tryon, LLC in Support of South Tryon's Motion for Summary Judgment, dated February 2, 2016.
- "Pickhardt Dec." refers to the Declaration of Jonathan E. Pickhardt in Support of South Tryon's Motion for Summary Judgment, dated February 2, 2016.
- "Pickhardt Dec. Ex. [ ]" refers to an exhibit to the Declaration of Jonathan E. Pickhardt in Support of South Tryon's Motion for Summary Judgment, dated February 2, 2016.

[2] Capitalized terms used but not defined herein have the meaning given to them in the Indenture.

1

principal amount of Senior Notes which may be issued under th[e] Indenture"); Offering Circular at 1-3 (describing the "Securities Offered").)

3. With the proceeds received from the sale of Notes, Triaxx 06-1 purchased Collateral Debt Securities securing the obligations of Triaxx 06-1 to Noteholders. (*See* Offering Circular at 5.) The Collateral Debt Securities purchased by Triaxx 06-1 are residential mortgage-backed securities ("RMBS"). (*Id.*)

4. The principal and interest generated by the Collateral Debt Securities are used to pay Triaxx 06-1's expenses and make interest and principal payments to the CDO's Noteholders. (*See* Indenture §§ 11.1(a)(i) & (ii) (the "Interest Proceeds Waterfall" and "Principal Proceeds Waterfall," respectively).)

5. Triaxx 06-1 has no employees. (*See id.* § 7.4(c)(1).) Its daily activities are managed by its service providers, including, but not limited to, a Trustee, Collateral Administrator, and Collateral Manager. (*See, e.g.*, Offering Circular at 4-5 ("Certain advisory, consulting, administrative and related functions with respect to the Collateral Debt securities will be performed by ICP Asset Management, LLC ("ICP"), as collateral manager . . ."); *id.* at 123 ("[T]he Issuer will retain the Collateral Administrator, to assist in the preparation of certain reports with respect to the Collateral Debt Securities."); Indenture § 6.1 (setting forth "[c]ertain [d]uties and [r]esponsibilities" of the Trustee).)

**The Collateral Manager**

6. Triaxx 06-1 initially retained ICP Asset Management, LLC ("ICP") as Collateral Manager. (Offering Circular at 4; *see also* Collateral Management Agreement dated September 7, 2006, by and between Triaxx 06-1, as issuer, Triaxx Prime CDO 2006-1, LLC, as co-issuer,

and ICP, as collateral manager at 1 (Pickhardt Dec. Ex. B; hereinafter the "CMA") (defining the "Collateral Manager" as ICP).)

7.      ICP changed its name to Triaxx Asset Management LLC ("Triaxx Asset Management") in 2015.  (Triaxx Asset Management, Unif. Application for Inv. Adviser Registration & Report by Exempt Advisers (Form ADV), at 1 (May 7, 2015) (Pickhardt Dec. Ex. D).)

8.      Triaxx Asset Management continues to act as Collateral Manager for Triaxx 06-1. (*See* Notice from Triaxx Asset Management to Noteholders of Triaxx Prime CDO 2006-1, Ltd., dated Dec. 16, 2016 (Pickhardt Dec. Ex. J) (notice issued by Triaxx Asset Management identifying itself as the Collateral Manager for Triaxx 06-1).)  Triaxx Asset Management is now principally owned and run by Vishal Garg.  (Triaxx Asset Management, Unif. Application for Inv. Adviser Registration & Report by Exempt Advisers (Form ADV), Schedule B (May 7, 2015) (Pickhardt Dec. Ex. D).)

9.      The Collateral Manager is tasked with the selection and management of Triaxx 06-1's assets.  (*See* CMA § 2(a).)

10.     The Collateral Manager is also tasked with fulfilling the duties assigned under the Indenture to Triaxx 06-1, which is a special purpose vehicle without any employees who could fulfill such tasks.  (*See, e.g.*, *id.* ("[T]he Collateral Manager agrees … to perform on behalf of the Issuer (or the direct the performance of) those duties and functions assigned to the Issuer or the Collateral Manager in the Indenture . . . .").

**The Trustee And Collateral Administrator**

11.     U.S. Bank acts as Trustee for Triaxx 06-1.  (Interpleader Compl. ¶ 7.)

12. As Trustee, U.S. Bank holds the Collateral Debt Securities owned by Triaxx 06-1 as security on the Issuer's obligations to Noteholders. (*See* Indenture, Granting Clause, at p. 1 ("The Issuer hereby Grants to the Trustee, for the benefit and security of the Secured Parties, all of its right, title and interest in . . . the Collateral Debt Securities . . . .")

13. The Trustee is also tasked with certain ministerial functions including the disbursement of cash generated by the Collateral Debt Securities to pay the Issuer's expenses and Noteholders. (*See, e.g.*, *id.* §§ 10.1 & 11.1.)

14. Triaxx 06-1 has also retained a Collateral Administrator to assist it in preparing certain reports with respect to the Collateral Debt Securities, including Monthly Reports, which are issued monthly, and Note Valuation Reports, which are issued quarterly. (*See* Offering Circular at 123 ("[T]he Issuer will retain the Collateral Administrator, to assist in the preparation of certain reports with respect to the Collateral Debt Securities.").)

**South Tryon's Beneficial Ownership**

15. South Tryon is the beneficial owner of Class A-1 Notes issued by Triaxx 06-1 with an original principal balance of $136,264,000. (Pentlow Dec. ¶ 3 & Ex. A.)

16. South Tryon is also the beneficial owner of Class M Certificates issued by Bank of America Funding 2012-R4 Trust (the "BAFC 2012-R4 Trust") with an original principal balance of $174,147,000, constituting approximately 51.2% of the total Class M Certificates issued by the BAFC 2012-R4 Trust. (*Id.* ¶ 4 & Ex. A.) As such, South Tryon is the Majority Certificateholder of the BAFC 2012-R4 Trust. (*See* BAFC 2012-R4 Trust Agreement, dated as of May 24, 2012 (Pickhardt Dec. Ex. E).)

17. The BAFC 2012-R4 Trust, in turn, owns approximately 82.64% of the Class A-1 Notes issued by Triaxx 06-1, with an original principal balance of $1,983,315,000. (*Id.* at Ex. B-1.)

**The Relevant Provisions of the Indenture and CMA**

18. Defaulted Securities are defined under the Indenture as securities exhibiting a variety of different characteristics indicating an enhanced risk of loss, including any Collateral Debt Security:

> that is rated "Ca" or "C" by Moody's or is rated "Caa3" by Moody's and is placed by Moody's on a watchlist for possible downgrade by Moody's or has no rating from Moody's but the Issuer has obtained a credit estimate from Moody's that such Collateral Debt Security has a Moody's Rating Factor of 10,000 or higher; [or]
>
> that is rated "CC," "D" or "SD" or below (or has had its rating withdrawn) by Standard & Poor's ….

(Indenture § 1.1 at 13-14 (definition of "Defaulted Security," paragraphs (e) and (f).))

19. Section 12.1(a) of the Indenture requires that "the Issuer (upon direction of the Collateral Manager to the Issuer and the Trustee) … shall sell [] any Defaulted Security … within three years after such Collateral Debt Security became a Defaulted Security …" (*Id.* § 12.1(a)(ii)(a)) (such Defaulted Securities, after the third anniversary of their becoming Defaulted Securities, hereinafter referred to as "Three Year Defaulted Securities").

20. Section 12.1(b) of the Indenture requires that "[t]he Collateral Manager, on behalf of the Issuer, shall use commercially reasonable efforts to sell … each Defaulted Security … required to be sold pursuant to Section 12.1(a) hereof within the time periods (if any) specified in Section 12.1(a) hereof …" (*Id.* § 12.1(b).)

21. Section 2(a) of the CMA states that the Collateral Manager agrees to "supervise and direct the sale … of Collateral Debt Securities in accordance with Article XII of the Indenture." (CMA § 2(a).)

22. Section 12.1(b) of the Indenture provides:

> In respect of each Defaulted Security …, not less than five Business Days prior to the date on which a Defaulted Security … must be sold in accordance with Section 12.1(a) hereof, the Collateral Manager shall solicit *bona fide* bids for such Defaulted Security … from at least three Approved Dealers. The Issuer shall sell … such Defaulted Security … to the highest bidder.

(Indenture § 12.1(b).)

**The Collateral Manager Fails To Sell Defaulted Securities Within Three Years**

23. In September 2009, assets held by Triaxx 06-1 started becoming Defaulted Securities on account of ratings downgrades. (Sept. 2009 Monthly Report, at 28; Nov. 2009 Note Valuation Report, at 28 (Pickhardt Dec. Exs. I & L, respectively); *see also* Pickhardt Dec. Ex. N & App'x A.)

24. When assets held by Triaxx 06-1 started becoming Defaulted Securities, the Issuer, by and through the Collateral Administrator, began listing these securities in a section of the Monthly Reports and Note Valuation Reports entitled "Non-Performing Assets," where the Defaulted Securities are described as "D" or "DF" (meaning "Default") along with the date when such Collateral Debt Securities became Defaulted Securities. (Sept. 2009 Monthly Report, at 28; Nov. 2009 Note Valuation Report, at 28 (Pickhardt Dec. Exs. K & N, respectively).)

25. Starting in September 2012, certain Defaulted Securities began reaching the end of the three-year period in which they were required to be sold by the Collateral Manager. (*See* Pickhardt Dec. Ex. P & App'x A.)

26.     In October 2012, the Issuer added a column to the "Non-Performing Assets" section for "Aged Defaulted Securities" and began listing Three Year Defaulted Securities as Aged Defaulted Securities under this header in the Monthly Reports and Note Valuation Reports. (*See* Oct. 2012 Monthly Report, at 28; Nov. 2012 Note Valuation Report, at 28-29 (Pickhardt Dec. Exs. L & O, respectively).)

27.     As of the Monthly Report dated as of December 28, 2015 (the "December 2015 Monthly Report"), out of the 85 total securities held by Triaxx 06-1, there are 63 securities listed as Defaulted Securities in the Non-Performing Assets section. (Dec. 2015 Monthly Report, at 28-29 (Pickhardt Dec. Ex. M).)

28.     Of those 63 Defaulted Securities, 49 are listed in the December 2015 Monthly Report as Aged Defaulted Securities, meaning that they have been Defaulted Securities for three years or more. (*Id.*) According to the December 2015 Monthly Report, the Three Year Defaulted Securities held by Triaxx 06-1 have a current principal balance of $542,625,439.24. (*Id.*)

29.     The overwhelming majority of the Three Year Defaulted Securities became Three Year Defaulted Securities recently; 41 out of the 49 Three Year Defaulted Securities reached the three year anniversary of their becoming a Defaulted Security within 18 months of the filing of the Interpleader Complaint (and within only one year of the time when South Tryon alerted the Collateral Manager of its failure to fulfill its obligations, as discussed below). (*See* Pickhardt Dec. Ex. P; *see also* Pickhardt Dec. App'x A.)

30.     The accuracy of the Defaulted Security and Three Year Defaulted Security designations is verified by Bloomberg reports reflecting the ratings action causing each of these Collateral Debt Securities to become a Defaulted Security, and the date on which that ratings

action occurred.  (*See* Pickhardt Dec. Ex. P; *see also* Pickhardt Dec. App'x A & B (summarizing the contents of the Bloomberg reports).)

31.     The Collateral Manager has failed to effect the sale of even a single Defaulted Security since 2009.  (*Compare* Sept. 2009 Monthly Report, at 35-37 (Pickhardt Dec. Ex. K) (reflecting assets held by Triaxx 06-1 when first asset became a Defaulted Security) *with* Dec. 2015 Monthly Report, at 34-36 (Pickhardt Dec. Ex. M) (reflecting same set of assets held by Triaxx 06-1 as of December 28, 2015, less six assets on which principal was fully paid down, with 63 of such assets as Defaulted Securities).)

**Notice Of The Breach And The Aborted November Auction**

32.     On July 15, 2015, South Tryon alerted Triaxx Asset Management by letter that its failure to direct the sale of the Three Year Defaulted Securities constituted a breach of its obligations under the Indenture.  (Pickhardt Dec. ¶ 8; Letter from South Tryon to Collateral Manager (Jul. 15, 2015) (Pickhardt Dec. Ex. F).)

33.     In the same letter, South Tryon demanded that the Collateral Manager take immediate steps to sell the Three Year Defaulted Securities and to complete those sales within 30 days.  (Pickhardt Dec. ¶ 8; Letter from South Tryon to Collateral Manager (Jul. 15, 2015) (Pickhardt Dec. Ex. F).)

34.     In responding to South Tryon's letter, Triaxx Asset Management did not dispute South Tryon's characterization of Triaxx Asset Management's duty to sell the Three Year Defaulted Securities.  Rather, in a letter dated August 31, 2015, counsel for Triaxx Asset Management confirmed its intent to "conduct an orderly liquidation of the Defaulted Securities" and represented that it was "moving forward expeditiously in its capacity as Collateral Manager to attempt to sell the Defaulted Securities in an orderly manner and consistent with the intent of

the Indenture and Collateral Management Agreement."  (Pickhardt Dec. ¶ 9; Letter from Collateral Manager to South Tryon (Aug. 31, 2015) (Pickhardt Dec. Ex. G).)

35. On November 18, 2015, the Collateral Manager caused a liquidation agent, Dock Street Capital Management LLC, to list the Three Year Defaulted Securities for sale.  (Pickhardt Dec. ¶ 10 & Ex. H.)

36. The sale was to proceed in auctions scheduled on November 23, 2015 and November 24, 2015.  (*Id.*)

37. On the morning of November 23, 2015, the sale of the Three Year Defaulted Securities was abruptly cancelled.  (*Id.* ¶ 11 & Ex. I.)

38. Triaxx Asset Management has refused to relist the Three Year Defaulted Securities since the aborted November auction.  (*Id.* ¶ 12.)

| | | |
|---|---|---|
| DATED: | New York, New York<br>February 2, 2016 | Respectfully submitted,<br><br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By: _____<br>Jonathan E. Pickhardt<br>*jonpickhardt@quinnemanuel.com*<br>Blair A. Adams<br>*blairadams@quinnemanuel.com*<br>Kimberly E. Carson<br>*kimberlycarson@quinnemanuel.com*<br><br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>(212) 849-7000<br><br>*Attorneys for Interpleader-Defendant South Tryon, LLC* |